# No. 14-1594

---

UNITED STATES COURT OF APPEAL
SECOND CIRCUIT

---

ELIZABETH SHIFLETT

*Appellant,*

-against-

SCORES HOLDING COMPANY, INC.

*Appellee.*

---

**BRIEF OF APPELLANT**

---

Matthew J. Blit
LEVINE & BLIT, PLLC
350 Fifth Avenue, Suite 3601
New York, NY 10118
(212) 967-3000
*Attorney for Appellant*

August 22, 2014

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.............................................................. iv

PRELIMINARY STATEMENT...................................................... 1

JURISDICTIONAL STATEMENT................................................. 1

STATEMENT OF THE ISSUE PRESENTED FOR REVIEW.................. 3

STATEMENT OF THE CASE....................................................... 4

    A.    Relevant Facts........................................................ 4

        1.    The Inter-Relation Between Scores Holding and
              Scores West................................................... 4

        2.    Scores Holding's Dealings with Scores West and
              Other Licensees............................................... 6

        3.    Shiflett's Experience as a Scores Holding
              Employee....................................................... 8

        4.    Scores West Declares Bankruptcy and Dissolves Prior
              to Shiflett's Commencement of the Instant Action......... 9

    B.    Relevant Procedural History...................................... 10

SUMMARY OF THE ARGUMENT............................................. 11

ARGUMENT........................................................................ 14

    A.    Standard of Review................................................ 14

    B.    The Summary Judgment Standard.............................. 14

    C.    A Genuine Issue of Material Fact Exists as to Whether
        Scores Holding Was an Employer of Shiflett.................. 15

1.    Many Facts in Dispute Were Not Viewed in a Light
      Most Favorable to Shiflett, or the Justifiable Inferences
      Therefrom, by the Lower Court.................................... 15

2.    A Genuine Issue of Material Fact Exists as to
      Whether Scores Holding Was a 'Single Employer'
      of Shiflett................................................................. 18

      a.    Scores Holding and Scores West
            Maintained Inter-Related Operations.................. 19

      b.    Scores Holding Had Centralized Control
            over the Labor of Scores West........................... 21

      c.    Scores Holding and Scores West Were
            Under Common Management............................. 22

      d.    Scores Holding and Scores West Were Under
            Common Ownership and Financial Control....... 23

3.    A Genuine Issue of Material Fact Exists as to
      Whether Scores Holding Was a 'Joint Employer'
      of Shiflett................................................................. 24

      a.    Scores Holding Had the Authority to Hire
            and Fire Employees............................................ 24

      b.    Scores Holding Established and Controlled
            the Conditions of Employment for Shiflett
            and Other Employees of Scores West................ 25

      c.    Scores Holding Established the Rate of Pay for
            Shiflett and Other Employees of Scores West.... 25

      d.    Since Scores Holding and Scores West
            Occupied the Same Office Space, It Is
            Reasonable to Infer Scores Holding
            Maintained Employment Records for
            Scores West...................................................... 26

CONCLUSION..................................................................................... 26

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)...................... 28

SPECIAL APPENDIX................................................................. addendum

# TABLE OF AUTHORITIES

<u>Cases</u>

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..................................................................... 14, 15

*Carter v. Dutchess Comm. College*,
    735 F.2d 8 (2d Cir. 1984).................................................................. 24

*Clinton's Ditch Coop. Co. v. NLRB*,
    778 F.2d 132 (2d Cir. 1985)............................................................. 18

*Herman v. RSR Sec. Seros. Ltd.*,
    172 F.3d 132 (2d Cir. 1999)............................................................. 24

*Lihli Fashions Corp. v. NLRB*,
    80 F.3d 743 (2d Cir. 1996)................................................... 18, 19, 23

*Loeffler v. Staten Island Univ. Hosp.*,
    582 F.3d 268 (2d Cir. 2009)............................................................. 14

*NLRB v. Al Bryant, Inc.*,
    711 F.2d 543 (3d Cir. 1983)............................................................. 19

*Radio & Television Broad. Technicians Local Union 1264 v.*
*Broad. Serv. of Mobile, Inc.*,
    380 U.S. 255 (1965)........................................................................ 18

*Velez v. Sanchez*,
    693 F.3d 308 (2d Cir. 2012)............................................................. 24

<u>Statutes</u>

28 U.S.C. § 1331............................................................................... 1

28 U.S.C. § 1367............................................................................... 1

Rules

Fed. R. Civ. Pro. 56...................................................................... 1, 2, 14

## PRELIMINARY STATEMENT

Plaintiff-Appellant Elizabeth Shiflett ("Shiflett") appeals from a final judgment entered pursuant to a decision by the United States District Court for the Southern District of New York granting summary judgment, pursuant to Fed. R. Civ. Pro. 56, to Defendant-Appellee Scores Holding Company, Inc. ("Scores Holding") on the sole issue of whether Scores Holding was a an employer of Shiflett, within the meaning of Title VII of the Civil Rights Act of 1964, as amended, thereby dismissing Shiflett's federal claims and dismissing, without prejudice, Shiflett's state law claims after the district court declined to exercise supplemental jurisdiction. (S00001-S00017)[1].

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction over the civil action brought by Shiflett pursuant to 28 U.S.C. §§ 1331 and 1367, as she has brought causes of action for hostile work environment harassment based upon sex and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and causes of action for hostile work environment based upon sex and race and retaliation in

---

[1] The Special Appendix will be cited to as "S_____."

1

violation of the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"). (A00001-A00025).[2]

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. A final judgment was entered on April 10, 2014. (S00001-S00017). Shiflett timely filed her notice of appeal on May 9, 2014. (A00004).

This appeal is from a final judgment dismissing all of Shiflett's claims under Title VII pursuant to Fed. R. Civ. Pro. 56 and dismissing, without prejudice, all of Shiflett's claims under the NYSHRL and NYCHRL after the lower court declined to exercise supplemental jurisdiction over those claims.

---

[2] The Appendix will be cited to as "A_____."

## <u>STATEMENT OF THE ISSUE PRESENTED FOR REVIEW</u>

Whether the lower court erred in applying the appropriate summary judgment standard by failing to view all evidence and reasonable inferences therefrom in a light most favorable to the non-moving party, weighing evidence, and making credibility determinations when finding that a defendant-corporation, which exercised substantial control and influence over its sublicensee and plaintiff's direct employer, was not a 'single employer' or 'joint employer' of a plaintiff-employee who was subjected to violations of Title VII.

## STATEMENT OF THE CASE

**A.    Relevant Facts**

**1.    The Inter-Relation Between Scores Holding and Scores West**

On March 11, 2002, Scores Holding acquired Go West Entertainment Inc. ("Scores West" or "Go West") in exchange for common stock in Scores Holding paid to Richard Goldring ("Mr. Goldring"), William Osher and Elliot Osher ("the Oshers").    (A00126).    A year later, Scores Holding transferred all of the stock in Scores West back to Mr. Goldring and the Oshers.    (A00126).    Immediately thereafter, Mr. Goldring and William Osher exchanged some of their stock in Scores West for 100% of the stock in Entertainment Management Services Inc. ("EMS").  (A00126).

At all times relevant to this action, Mr. Goldring owned 46.1% of Scores Holding's stock while the Oshers held a combined 17.6% of Scores Holding's stock.  (A00123).  Scores Holding gave an exclusive world-wide license to its 'Scores' trademark to its affiliate, EMS, which has a term of 20 years plus six 5-year renewals at the option of EMS.  (A00081).  Mr. Goldring, Elliot Osher, and Harvey Osher each owned one-third of EMS's stock. (A00125).

EMS, in turn, licensed the right to use the 'Scores' trademark to Scores West and 333 East 60th Street, Inc. ("Scores East"), which are

4

corporations affiliated with EMS and Scores Holding that operate the gentlemen's clubs known as "Scores West" and "Scores East", respectively. (A00081-A00082). "EMS is required to pay [Scores Holding] 100% of the royalties received from affiliated clubs and 50% of royalties received from non-affiliated clubs." (A00081). Mr. Goldring owned two-thirds of both Scores West and Scores East, while Elliot Osher owned one-third of both Scores West and Scores East. (A00125-A00127).

"[Scores Holding] is affiliated through common ownership with two existing nightclubs in New York, New York ("Scores East" and "Scores West")...." (A00081). "If Scores West loses its liquor license permanently, most likely, due to common ownership of these two clubs, Scores East would not be able to pay us any royalty income." (A00154). Undeniably, Scores West, Scores East, and Scores Holding were under common control. (A00211).

At all times relevant to this action, Mr. Goldring operated and managed EMS, Scores West, and Scores East. (A00217, A00220, A00223). Mr. Goldring was the President, Chief Executive Officer, and Director of Scores Holding until February 28, 2007 and retained his 46.1% ownership in Scores Holding at all times relevant to this action. (A00123-A00125).

Beginning on February 28, 2007 and as of March 31, 2008, Scores Holding was indebted to Mr. Goldring in the amount of $1 million. (A00154).

The economic reality of the situation is simply that Mr. Goldring and the Oshers, the combined majority owners of Scores Holding at 63.7% of the voting stock (with Mr. Goldring holding a substantial plurality ownership of 46.1% of the voting stock in Scores Holding), were licensing Scores Holding's trademark to themselves (EMS) to then sublicense the trademark to themselves (Scores West and Scores East) to use as the trade name for their gentleman's clubs in New York City. In turn, Mr. Goldring and the Oshers would then pay themselves (Scores Holding), as 100% of the royalties owed to EMS by Scores West and Scores East would be provided in full to Scores Holding. (A00081).

## 2.    Scores Holding's Dealings with Scores West and Other Licensees

"In connection with Go West's construction of Scores West, [Scores Holding] loaned Go West $1,636,264 in exchange for a promissory note from Go West (the "Note")" and did not move to collect on the loan while Scores West was in operation. (A00092). Scores West defaulted on the loan and owed Scores Holding $1,867,310 as of December 31, 2007. (A00093). "[Scores Holding] ha[s] forgone interest on the Note." (A00092).

Scores Holding leased office space from Scores West at the monthly rate of $5,000 for 700 square feet. (A00086). Scores Holding's corporate office was located immediately above Scores West's club and shared office space with Scores West. (A00207, A00252). However, Scores Holding did not actually pay rent to Scores West; rather, rent was "offset by outstanding royalties that Go West owes us [Scores Holding]." (A00086). EMS also occupied the same office space leased by Scores West to Scores Holding. (A00206). However, the acting Chief Executive Officer of Scores Holding as of February 7, 2008, Curtis Smith, could not identify the separate space that EMS occupied in the office or the presence of any employee of EMS in the office at any time. (A00208-A00209). Mr. Smith did note that John Neilson, President and Director of Scores, would act on behalf of EMS in relation to Scores Holding's sublicensees, which included Scores West. (A00209).

Scores Holding actively sought to provide standardized recruiting, training and assistance in all areas of business to its sublicensees, including Scores West. (A00225-A00226). In addition, Mr. Neilson, President and Director of Scores, was involved in the business decisions of Scores West:

> Q.    What role, if any, do you play in Go West?
> A.    Mr. Goldring will from time to time ask my advice on
>        certain matters.
> Q.    Like what?

      A.     Business decisions, decisions relating to the operation of
the business, ideas, suggestions.

(A00221).

Undeniably, Mr. Goldring controlled the daily operations of
Scores West and Scores East. (A00220, A00223). Considering Mr.
Goldring's position of control through 46.1% stock ownership of
Scores Holding, two-thirds stock ownership of Scores West, and the
$1 million obligation owed to him by Scores Holding, as identified
above, it is fair and reasonable to infer that he exercised considerable
influence and control over the decisions of Scores Holding, just as he
did while as its Chief Executive Officer, President and Director less
than a year prior.

### 3.    Shiflett's Experience as a Scores Holding Employee

From about October 2007 until March 2008, Shiflett worked as a
cocktail waitress at the Scores West club. (A00008, A00043). Shiflett was
led to believe that she was an employee of Scores Holding, which was
confirmed by the Employee Handbook that she received identifying "Scores
Corporate NYC Office" located at 533-535 West 27th Street, 2nd Floor,
New York, NY 10001 as one of several "Important Addresses and
Telephone Numbers". (A00252, A00259-A00260). It is undisputed that this
is the precise location of Scores Holding's corporate office. (A00195,

8

A00198). In fact, Scores West and Scores East had substantively the same Employee Handbooks. (A00223). No mention of Go West or differentiation between Scores West and Scores Holding is made in the Employee Handbook. Rather, the Employee Handbook gives the impression that Scores West, Scores East, and Scores Holding are inter-related entities under common management, direction, and control. (*See* A00252). In fact, Scores Holding and Scores West shared the same telephone number and fax number. (A00252). Therefore, if an employee were to report or complain about discrimination or harassment at Scores West, the employee would be contacting Scores Holding. Moreover, Shiflett has personal knowledge that employees of Scores West would often pick up shifts at Scores East, which indicates that these entities were a single integrated enterprise for labor. (A00260).

### 4.    Scores West Declares Bankruptcy and Dissolves Prior to Shiflett's Commencement of the Instant Action

Scores West filed for bankruptcy in or around March 2008. (A00042). Scores West dissolved on or about July 28, 2010. (A00007, A00028). After a substantial investigation and probable cause finding against Scores Holding, the Equal Employment Opportunity Commission issued its notice of right to sue to Shiflett on March 28, 2013. (A00022-A00025).

9

**B.     Relevant Procedural History**

Shiflett timely commenced the instant civil action against Scores Holding alleging causes of action for hostile work environment harassment based upon sex and retaliation pursuant to Title VII and hostile work environment harassment based upon sex and race and retaliation pursuant to the NYSHRL and NYCHRL on June 14, 2013 in the United States District Court for the Southern District of New York. (A00001). Scores Holding joined the civil action by submitting its Answer on July 30, 2013. (A00002). Due to previous litigation of the issue, the parties agreed that Scores Holding could move for summary judgment on the sole issue of whether Scores Holding could be held liable as Shiflett's employer within the meaning of Title VII. (A00002). Scores Holding's motion, memorandum of law, and supporting evidence were filed on September 30, 2013 and its Statement of Material Facts was filed on October 1, 2013. (A00003). Shiflett opposed the motion and submitted her Counter-Statement of Material Facts, memorandum of law, and supporting evidence on October 30, 2013. (A00003). Scores Holding submitted its reply memorandum of law on November 20, 2013. (A00003).

On April 10, 2014, the Honorable Naomi Reice Buchwald issued the lower court's Memorandum and Order, which granted summary judgment to

Scores Holding on the sole issue of whether Scores Holding was a 'single employer' or 'joint employer' of Shiflett on Shiflett's Title VII claims and dismissed, without prejudice, Shiflett's NYSHRL and NYCHRL claims after the lower court declined to exercise supplemental jurisdiction. (A00003, S00001-S00017).   Shiflett timely filed her notice of appeal on May 9, 2014. (A00004).  This appeal followed.

## SUMMARY OF THE ARGUMENT

At the summary judgment stage, it is well-established that the court's inquiry is limited to issue identification rather than issue determination.  The sole issue on appeal is whether Scores Holding can be held liable as an employer of Shiflett within the meaning of Title VII.  If a genuine issue of material fact exists concerning each element of the claim brought by the plaintiff after viewing all admissible evidence in favor of the non-moving party and drawing all justifiable inferences in favor of the non-moving party, then the court should deny the moving party's motion and allow these issues of fact to be determined by a jury.  In the instant case, the lower court (a) failed to view all evidence, and justifiable inferences therefrom, in favor of the non-moving party, which in this case is Shiflett; (b) improperly weighed the evidence in favor of the moving party, which in this case is Scores

Holding; and (c) made credibility determinations in favor of the moving party, which in this case is Scores Holding.

A genuine issue of material fact exists to allow a reasonable jury to conclude that Scores Holding was a 'single employer' of Shiflett because Shiflett presented evidence that would support a finding that: (1) Scores Holding and Scores West were interrelated operations through common controlling shareholders, common executives, common offices and communications lines, common revenue, common employee recruiting and training, and a lack of arm's length dealing concerning loan repayment and royalty payments from Scores West; (2) Scores Holding exercised centralized control over Score West's labor through the recruiting, training, implementation of its policies, and the inference that Scores Holding was the ultimate decision maker on important issues through Scores West's Employee Handbook; (3) Scores Holding and Scores West were under common management and control via Mr. Goldring's controlling shareholder positions in both companies, the $1 million dollar obligation owed to him by Scores Holding, his recent or current executive positions held at both Scores Holding and Scores West, and Mr. Neilson's activity in business operations of Scores West; and (4) Scores Holding and Scores West

were under the common controlling ownership and financial control of Mr. Goldring.

A genuine issue of material fact exists to allow a reasonable jury to conclude that Scores Holding was a 'joint employer' of Shiflett because Shiflett presented evidence that would support a finding that: (1) Scores Holding had the authority to hire and train employees through its acknowledged assistance in recruiting and training entertainers and managers for its sublicensees; (2) Scores Holding established and controlled the conditions of employment for its sublicensees through the training it provided and its Employee Handbook, which sets guidelines for employee conduct and identifies Scores Holding (or "Scores Corporate") as an important contact for Scores West's employees; (3) an inference exists that Scores Holding, who assisted in the recruitment of its sublicensees' employees and had an interest in securing royalties from revenue of its sublicensees, established rates of pay for the employees it helped recruit; and (4) an inference exists that since Scores Holding and Scores West shared a common and indistinguishable office space with the same lines of communication that Scores Holding maintained or assisted in maintaining employment records for Scores West.

13

For these reasons, which are further addressed below, Shiflett respectfully requests that this Court reverse the Opinion and Order of the lower court, in its entirety, and hold that a genuine issue of material fact exists as to whether Scores Holding was an employer of Shiflett within the meaning of Title VII, reverse dismissal of the lower court's decision not to exercise supplemental jurisdiction, and remand the action back to the lower court to continue litigating this action.

## ARGUMENT

### A.    Standard of Review

A grant of summary judgment is reviewed *de novo*, drawing all factual inferences in favor of the non-moving party. *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 274 (2d Cir. 2009).

### B.    The Summary Judgment Standard

Pursuant to F.R.C.P. Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could find in favor of the non-moving party. *Id.* at 248. A fact is material if it

14

"might affect the outcome of the suit under the governing law". *Id.* "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. As such, "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge". *Id.* at 255. Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

### C.    A Genuine Issue of Material Fact Exists as to Whether Scores Holding Was an Employer of Shiflett

#### 1.    Many Facts in Dispute Were Not Viewed in a Light Most Favorable to Shiflett, or the Justifiable Inferences Therefrom, by the Lower Court

There are numerous facts supported by admissible evidence that the lower court did not acknowledge or view it in a light most favorable to Shiflett, along with all justifiable inferences therefrom, that demonstrate that a genuine issue of material fact exists on the issue of whether Scores Holding can be held liable as a 'single employer' or 'joint employer' under Title VII. Among these are: (1) that, as the 46.1% shareholder of Scores

15

Holding, Mr. Goldring could exercise considerable influence over Scores Holding (A00123); (2) Scores Holding owed Mr. Goldring $1 million dollars giving Mr. Goldring even more influence over Scores Holding (A00084); (3) the President and Director of Scores Holding admitted, under oath, that he provided advice on "decisions relating to the operation of the business" to Scores West (A00221); (4) the inference that since Scores Holding was listed as 'Scores Corporate', shared the same telephone number as Scores West, and was identified as an important contact that important communications from employees, such as reports or complaints of discrimination, should be communicated to Scores Holding (A00252); (5) Mr. Goldring's commonality of ownership, and the influence that comes with ownership, of Scores Holding, EMS, and Scores West (A00122-A00127); (6) Scores Holding's inaction and non-collection upon Scores West's default on the loan provided by Scores Holding to Scores West (A00092); and (7) the printout from Scores Holding's website listing benefits to sublicensees of licensing the 'Scores' trademark from Scores Holding as access and assistance from "[t]he most experienced management team in the industry" in "recruiting and training" entertainers and managers, "hospitality training" and sales, marketing, and advertising (A00225-A00226).

These facts and others, and all justifiable inferences therefrom, which derive from admissible evidence, were not viewed in a light most favorable to Shiflett, as the non-moving party, when the lower court issued its Opinion contrary to the established summary judgment standard.

Instead, the lower court viewed the evidence in a light most favorable to the moving party, Scores Holding; weighed the evidence; and made credibility determinations. (S00009-S00014). For instance, the lower court gave substantial weight to the testimony of Mr. Neilson describing only his advice on mundane business decisions when Scores Holding's own website identifies that it assists its sublicensees in recruiting and training their employees. (A00225-A00226; S00010). Further, the lower court gave no weight to, and refused to draw any justifiable inferences from, the significance of Scores Holding's identification as "Scores Corporate" in the Scores West Employee Handbook. (S00011-S00012). If Scores Holding had no control or authority over the employees of Scores West, why is Scores Holding listed as an important contact in the Employee Handbook? (A00252). A reasonable inference from Scores Holding's appearance in the Employee Handbook as "Scores Corporate" is that Scores Holding was the ultimate decision maker or highest authority on important issues, such as work place harassment and other labor related issues. Moreover, the lower

court explicitly weighs the credibility of the evidence presented by Shiflett concerning Scores Holding's control over labor relations at Scores West, disregarding Shiflett's evidence to the contrary.    (A00122-A00127, A000225-A000226, A00252; S00012).  Admissible evidence, along with the justifiable inferences therefrom, exist that would allow a reasonable jury to determine that Scores Holding can be held liable under the 'single employer' or 'joint employer' theories.

> ### 2.    A Genuine Issue of Material Fact Exists as to Whether Scores Holding Was a 'Single Employer' of Shiflett

"Separate companies are considered a 'single employer' if they are 'part of a single integrated enterprise'".  *Lihli Fashions Corp. v. NLRB*, 80 F.3d 743, 747 (2d Cir. 1996) (quoting *Clinton's Ditch Coop. Co. v. NLRB*, 778 F.2d 132, 137 (2d Cir. 1985)).  To determine if 'single employer' status applies, the Court examines "interrelation of operations, common management, centralized control of labor relations and common ownership." *Lihli Fashions*, 80 F.3d at 747 (quoting *Radio & Television Broad. Technicians Local Union 1264 v. Broad. Serv. of Mobile, Inc.*, 380 U.S. 255, 256 (1965)).  "Also relevant are the use of common office facilities and equipment...." *Lihli Fashions*, 80 F.3d at 747.  "To demonstrate single employer status, not every factor need be present, and no particular factor is

controlling." *Id.* "Ultimately, single employer status depends on all the circumstances of the case and is characterized by absence of an 'arm's length relationship found among unintegrated companies'". *Id.* (quoting *NLRB v. Al Bryant, Inc.*, 711 F.2d 543, 551 (3d Cir. 1983)).

### a.   Scores Holding and Scores West Maintained Inter-Related Operations

Scores Holding and Scores West were inter-related and co-dependent operations, as evidenced by Scores Holding's 10-Q and 10-KSB filings from the relevant time period (A00122-A00127) and the sworn deposition testimony of its then executives (A00211, A00217, A00220, A00223); among other evidence. First, all of the relevant entities in this action were entirely or almost entirely owned and controlled by the same people; specifically, Mr. Goldring and the Oshers.   (A00122-A00127).   Mr. Goldring undeniably actively managed Scores West, Scores East, and EMS. (A00217, A00220, A00223).   Further, although the majority owner of Scores West, Mr. Goldring could exercise substantial influence and control over Scores Holding due to his vast plurality ownership stake, former executive and directorial positions, and the $1 million owed to him by Scores Holding.   (A00081-A00082, A00084, A00210).   Moreover, Scores Holding and Scores West are admittedly "affiliated" entities under "common ownership" and under "common control".   (A00094, A00210).

Second, Scores Holding was entirely dependent on its "sublicensees" for the production of its revenue; particularly, Scores West and Score East from which Scores Holding received 100% of the royalties provided to EMS. (A00081-A00082). As a result of its dependence on Scores West and other "sublicensees", Scores Holding offered and provided training and business assistance to Scores West. (A00221, A00225-A00226). Scores Holding went as far as providing a loan to Scores West to construct its club, a loan that Scores Holding never received any re-payment nor took action against Scores West despite its default. (A00092). Further, Scores Holding voluntarily forewent collecting royalties from Scores West in order to ensure the continued viability of Scores West. (A00092). Such generosity is uncommon in arm's length dealings. Moreover, Scores Holding maintained its corporate offices directly above the club operated by Scores West, not to mention within the same office space as Scores West, essentially rent-free because its monthly rent was "offset by outstanding royalties that Go West owes us", royalties that it claimed it was not even collecting. (A00086, A00092, A00252).

Lastly, the Employee Handbook provided to Shiflett demonstrates the inter-relation of the operations, as Scores West, Scores East and "Scores Corporate NYC Office" are all identified in the Employee Handbook as

"Important Addresses and Phone Numbers". (A00252). Clearly, Scores Holding played a significant role in the operations of Scores West; otherwise, its contact information would not be necessary or even relevant to Scores West's employees.

For the reasons stated above, a genuine issue of material fact exists as to whether Scores Holding and Scores West maintained inter-related operations.

### b.   Scores Holding Had Centralized Control over the Labor of Scores West

As discussed above, sufficient evidence in the form of Scores Holding's webpage and the Employee Handbook provided to Shiflett demonstrate Scores Holding's desire to hold and actual holding of centralized control over the labor of Scores West. (A00225-A00226, A00252). This included recruitment and training of Scores West's entertainers and managers and provision of employment practices and policies. (A00225-A00226, A00252). Further, Mr. Neilson testified under oath that he provided guidance and advice on business matters and business operations to Mr. Goldring concerning Scores West from time to time. (A00221). Business operations for a gentleman's club necessarily includes labor practices, policies and decisions. Thus, for the reasons stated above, a

genuine issue of material fact exists as to whether Scores Holding had centralized control over the labor of Scores West.

### c.    Scores Holding and Scores West Were Under Common Management

As established above, Mr. Goldring owned and operated Scores West, but also held a substantial position of influence over Scores Holding due to his 46.1% stock ownership, former executive and directorial positions at Scores Holding, and the fact that Scores Holding owed him $1 million, a sum Scores Holding could not afford to pay at the time. (A00081-A00082, A00084, A00210). Mr. Goldring would seek business advice from Scores Holding concerning business operations. (A00221). Further, Scores Holding was actively involved in the training and development of its licensees business. (A00225-A00226). Moreover, the Employee Handbook provided to employees of Scores West identifies Scores Holding as the "Scores Corporate NYC Office", which had the exact same telephone, fax, and physical address as Scores West. (A00252). It is reasonable to infer that because Scores Holding appeared in the Employee Handbook as being an important contact within the same office space and with the same contact information as Scores West that Scores Holding and Scores West worked together to manage the operations of the club. Thus, for the reasons stated

above, a genuine issue of material fact exists as to whether Scores Holding and Scores West were under common management.

### d.  Scores Holding and Scores West Were Under Common Ownership and Financial Control

As addressed above, Scores Holding and Scores West were under the common ownership and financial control of Mr. Goldring, at 46.1% and 66.67% stock ownership respectively.   (A00122-A00126).   As such, Mr. Goldring was positioned to dictate and exercise substantial financial control over Scores Holding and Scores West, without even the consideration of the $1 million debt owed to him by Scores Holding.

These factors taken together as a whole, demonstrate that there was an absence of an arm's length relationship between Scores Holding and Scores West.  *See Lihli Fashions*, 80 F.3d at 747.   As such, a genuine issue of material fact exists as to whether Scores Holding is a 'single employer' of Shiflett, as evidence in admissible form exists demonstrating the inter-relation of their operations, Scores Holding's control over labor, common management, and common ownership and control.   Therefore, Defendant is not entitled to judgment as a matter of law.

### 3. A Genuine Issue of Material Fact Exists as to Whether Scores Holding Was a 'Joint Employer' of Shiflett

When applying the 'joint employer' test, the Court "evaluates whether the alleged employer '(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Velez v. Sanchez*, 693 F.3d 308, 326 (2d Cir. 2012) (quoting *Carter v. Dutchess Comm. College*, 735 F.2d 8, 12 (2d Cir. 1984)). No one factor is dispositive. *Velez*, 693 F.3d at 326 (citing *Herman v. RSR Sec. Seros. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)).

### a. Scores Holding Had the Authority to Hire and Fire Employees

As evidenced by Scores Holding's website, Scores Holding was involved in the recruitment of employees of its sublicensees. (A00225-A00226). It is reasonable to infer, that, as such, Scores Holding had the ability to determine or provide guidelines to determine the individuals hired by its sublicensees, including Scores West. If a party has the authority to hire, it is reasonable to infer the party also had the authority to fire. Therefore, a genuine issue of material fact exists as to whether Scores Holding had the authority to hire or fire, or at least recommend the hiring or firing, of employees of Scores West.

24

### b.    Scores Holding Established and Controlled the Conditions of Employment for Shiflett and Other Employees of Scores West

As established by Scores Holding's website and Employee Handbook, Scores Holding provided training and guidance to its sublicensees in establishing the conditions of employment for their employees and their employees' practices. (A00225-A00226, A00252). Further, Mr. Neilson, President of Scores Holding, testified that he provided advice to Scores West, well after the club was formed, concerning business operations, which would include labor relations. (A00221). As such, a genuine issue of material fact exists as to whether Scores Holding controlled the conditions of employment for the employees at Scores West, including Shiflett.

### c.    Scores Holding Established the Rate of Pay for Shiflett and Other Employees of Scores West

As established by Scores Holding's website, Scores Holding was involved in the recruitment and training of its sublicensees' entertainers and managers. (A00225-A00226). It is reasonable to infer, that part of recruitment is establishing pay rates or range of pay rates for different types of employees. Therefore, a genuine issue of material fact exists as to whether Scores Holding set the rate of pay for the employees of Scores West.

### d.    Since Scores Holding and Scores West Occupied the Same Office Space, It Is Reasonable to Infer Scores Holding Maintained Employment Records for Scores West

Scores Holding and Scores West shared the exact same office space, telephone number, and fax number. (A00252). In addition it was involved in the recruitment and training of entertainers and managers for its sublicensees, including Scores West. (A00225-A00226). It is reasonable to infer that, given the significant interrelation between Scores Holding and Scores West and its shared office space, that Scores Holding maintained or was involved in maintaining employment records for employees of Scores West, including Shiflett.

Pursuant to the above referenced evidence, and justifiable inferences drawn therefrom, a genuine issue of material fact exists as to whether Scores Holding was a 'joint employer' of Shiflett. Therefore, this Court should reverse the lower court's decision.

### CONCLUSION

For the reasons stated herein, Shiflett respectfully requests that this Court reverse the Opinion and Order of the lower court, in its entirety, and hold that a genuine issue of material fact exists as to whether Scores Holding was an employer of Shiflett within the meaning of Title VII, reverse dismissal of the lower court's decision not to exercise supplemental

26

jurisdiction, and remand the action back to the lower court to continue litigating this action.

Dated:  August 22, 2014
        New York, NY

Respectfully submitted,

LEVINE & BLIT, PLLC

Matthew J. Blit
*Attorneys for Appellant*
350 Fifth Avenue, Suite 3601
New York, NY 10118
Tel. (212) 967-3000
mblit@levineblit.com

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)</u>

I hereby certify pursuant to Fed. R. App. P. 32(a)(7)(C) that the attached brief is proportionally spaced, has a typeface (Times New Roman) of 14 points, and contains 5,088 words (excluding, as permitted by Fed. R. App. P. 32(a)(7)(B), the table of contents, table of authorities, and certificate of compliance), as counted by the Microsoft Word processing system used to produce this brief.

Dated:  August 22, 2014
       New York, NY

_____
Matthew J. Blit

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew J. Blit, do hereby certify that, on August 22, 2014, I

caused a true and correct copy of the Brief of Appellant to be served by the

ECF system on the following:

      Neal S. Greenfield, Esq.
      617 11th Avenue
      New York, NY 10036
      Attorney for Appellee

Dated:  August 22, 2014
        New York, NY

                            Matthew J. Blit

# No. 14-1594

UNITED STATES COURT OF APPEAL
SECOND CIRCUIT

ELIZABETH SHIFLETT

*Appellant,*

-against-

SCORES HOLDING COMPANY, INC.

*Appellee.*

## SPECIAL APPENDIX

Matthew J. Blit
LEVINE & BLIT, PLLC
350 Fifth Avenue, Suite 3601
New York, NY 10118
(212) 967-3000
*Attorney for Appellant*

Neal S. Greenfield
SCORES HOLDING CO., INC
617 11th Avenue
New York, NY 10036
(212) 246-9090
*Attorney for Appellee*

August 22, 2014

## Special Appendix – Table of Contents

**DOCUMENT**                                                              **PAGE**

Memorandum and Order of the Honorable Naomi Reice Buchwald,
U.S.D.J., dated April 10, 2014 ....................................................................... S1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------X

ELIZABETH SHIFLETT,

        Plaintiff,

   - against -           **MEMORANDUM AND ORDER**

SCORES HOLDING COMPANY, INC.,        13 Civ. 4076 (NRB)

        Defendant.

-------------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Plaintiff Elizabeth Shiflett ("plaintiff" or "Shiflett") brings this action against Scores Holding Company, Inc. ("defendant" or "Scores Holding"), alleging unlawful treatment on account of her race and sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); the New York State Human Rights Law, N.Y. Exec. Law. § 290 et seq. (the "NYSHRL"); and the New York City Human Rights Law, N.Y. City Admin. Code § 8-101 et seq. (the "NYCHRL"). Pending before the Court is defendant's motion for summary judgment, which contends that Scores Holding is not properly considered plaintiff's employer under Title VII and therefore cannot be held liable for the conduct described in her complaint. For the reasons stated herein, we grant defendant's motion as it relates to the claims brought pursuant to Title VII and dismiss without prejudice the NYSHRL and NYCHRL claims.

## BACKGROUND

Scores Holding is a Utah corporation with a place of business at 533-535 West 27th Street, 2nd Floor, New York, NY 10001. Def. R. 56.1 Stmt. ¶ 1. It is publicly traded, registered with the SEC, and has over five hundred shareholders. Id. ¶ 5. Scores Holding has two employees and is fundamentally a licensing entity; by and through an agreement with Entertainment Management Services, Inc. ("EMS"), defendant licenses the "Scores" brand name to adult entertainment clubs nationwide. Mem. in Supp. of Def.'s Mot. for Summ. J. ("Def. Mem.") Ex. C. ("Def. 10-KSB") at 4, 7; Compl. ¶ 10.[1]

One such club was Scores West Side ("Scores West"). It was entitled to use the "Scores" name based on a sublicense agreement between its owner, Go West Entertainment, Inc. ("Go West") and defendant, signed on March 31, 2003. Compl. ¶ 10. That agreement provided that Scores West would pay royalties to EMS equal to 4.99% of gross revenues, and those royalties would in turn be paid to Scores Holding. Id. In connection with the construction of Scores West, defendant loaned Go West a $1,636,264 in exchange for a promissory note. Def. 10-KSB at

---

[1] "[T]he allegations in the Complaint are judicial admissions to which Plaintiffs are bound." Whitehurst v. 230 Fifth, Inc., No. 11 Civ. 767(KPF), 2014 WL 684826, at *9 (S.D.N.Y. Feb. 21, 2014); see also Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003).

-2-

S00002

15.  This sum was never repaid.  Id.  Go West was located at the same address as Scores Holding -- 533-535 West 27th Street, 2nd Floor, New York, NY 10001 -- and defendant actually leased seven hundred square feet of office space from the Go West at a monthly rate of $5000.  Id. at 9.  Rather than pay this rent, Scores Holding treated it as an offset against the royalties that Scores West owed under the licensing agreement.  Id.  Go West eventually filed for bankruptcy, and it was officially dissolved on July 28, 2010.  Id.

Central to the operation of Scores West was Richard Goldring ("Goldring"); he owned two-thirds of the club and ran its day-to-day operations.  See Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. ("Pl. Opp'n") Ex. B. ("Neilson Dep.") at 35:23-36:4;[2] Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 6 (conceding that Goldring "was the majority owner and manager" of Scores West).  For a time, he was also the President, CEO, and Director of Scores Holding.  However, Goldring resigned these positions on February 28, 2007, before plaintiff began her employment at Scores West.  Def. 10-KSB at 23.  Despite this resignation, he was still the largest shareholder in Scores Holding during the relevant time period;

---

[2] Exhibit B of plaintiff's memorandum is an excerpted portion of the deposition of John Neilson, who was the acting president of Scores Holding at the time he was deposed.

-3-

S00003

for the fiscal year ending December 31, 2007, Goldring owned
46.1% of the shares of Scores Holding stock. Id. at 21.
However, as of this writing, Goldring is no longer a Scores
Holding shareholder. See Scores Holding Co., Inc., Annual
Report (Form 10-K) (Apr. 15, 2009) at 13 ("On January 27, 2009,
Mr. Goldring sold all of [his] Shares in a private transaction .
. . .").

In October of 2007, Shiflett began working at Scores West
as a cocktail waitress. Compl. ¶ 15. Shortly after she began
her employment, her manager, Sammy Roman ("Roman"), started
repeatedly asking her out on dates. Id. ¶¶ 20-21. Once
rebuffed, his conduct toward Shiflett became physical; plaintiff
alleges that, among other things, Roman tried to unhook her bra
from behind and attempted "to glide a pen up her inner thighs"
while she was entering a drink order. Id. ¶¶ 22-23. In
addition, on or around March 2008, Roman summoned plaintiff to a
back room for a meeting; when she arrived, he straddled her and
requested that she perform oral sex on him, a demand Shiflett
refused. Id. ¶ 24. The complaint also alleges that plaintiff
was subjected to continual harassment from Mildre Garcia
("Garcia"), a bartender at the club, who berated Shiflett on
account of her Chinese heritage. Id. ¶ 26.

-4-

S00004

Plaintiff contends that supervisors and managers at Scores West were aware of her mistreatment, but "no remedial or corrective actions were undertaken." Id. ¶ 29. In fact, Shiflett alleges that Scores West's management actually "condoned and encouraged" Roman's and Garcia's behavior by intimidating other staff members into acquiescing to the harassing conduct. Id. ¶¶ 25, 28. In March of 2008, after having rejected Roman's advances and objected to her treatment more generally, Shiflett was terminated, allegedly in retaliation for lodging her complaints. Id. ¶ 30.

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on or about May 27, 2008. Def. Mem. at 2. The EEOC did not issue her a notice of right to sue until March 28, 2013, nearly three years after Go West's dissolution. Compl. ¶ 6. Shiflett then filed a complaint against Scores Holding on June 14, 2013, alleging that she had been subjected to sex-based discrimination, a hostile work environment on account of her race and sex, and unlawful retaliation when she objected to said treatment. Id. ¶ 1. Defendant responded by filing this motion for summary judgment on September 30, 2013, maintaining that, as a threshold matter, Scores Holding could not be liable under Title VII because it was not Shiflett's employer.

-5-

S00005

**DISCUSSION**

## I.  Standard of Review

A motion for summary judgment is appropriately granted when
there is no genuine issue as to any material fact and the moving
party is entitled to judgment as a matter of law.   Fed. R. Civ.
P. 56(a).   In this context, "[a] fact is 'material' when it
might affect the outcome of the suit under governing law," and
"[a]n issue of fact is 'genuine' if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party."
McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir.
2007) (internal quotation marks and citations omitted).   "In
assessing the record to determine whether there is [such] a
genuine issue to be tried, we are required to resolve all
ambiguities and draw all permissible factual inferences in favor
of the party against whom summary judgment is sought."
Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 101 (2d Cir.
2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255
(1986)).   On a motion for summary judgment, "[t]he moving party
bears the initial burden of demonstrating 'the absence of a
genuine issue of material fact.'"   F.D.I.C. v. Great Am. Ins.
Co., 607 F.3d 288, 292 (2d Cir. 2010) (quoting Celotex Corp. v.
Catrett, 477 U.S. 317, 323 (1986)).   Where that burden is
carried, the non-moving party "must come forward with specific

-6-

S00006

evidence demonstrating the existence of a genuine dispute of
material fact." Id. (citing Anderson, 477 U.S. at 249).  The
non-moving party "must do more than simply show that there is
some metaphysical doubt as to the material facts . . . and may
not rely on conclusory allegations or unsubstantiated
speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d
Cir. 2011) (internal quotation marks and citations omitted).  In
the Title VII context, whether a defendant is properly
considered a plaintiff's employer for liability purposes may be
resolved on a motion for summary judgment. See Smith v. K & F
Indus., Inc., 190 F. Supp. 2d 643, 647 (S.D.N.Y. 2002).

**II.  Employer Liability**

Under Title VII, it is unlawful "for an employer . . . to
discriminate against any individual with respect to his
compensation, terms, conditions, or privileges of employment,
because of such individual's race, color, religion, sex, or
national origin." 42 U.S.C. § 2000e-2(a)(1).  "Consequently,
the existence of an employer-employee relationship is a primary
element of Title VII claims." Gulino v. N.Y. State Educ. Dep't,
460 F.3d 361, 370 (2d Cir. 2006).  "Courts in this Circuit have
adopted two exceptions to the rule that employment
discrimination may be maintained only against a plaintiff's
direct employer." St. Jean v. Orient-Express Hotels Inc., 963

-7-

S00007

F. Supp. 2d 301, 307 (S.D.N.Y. 2013). "First, the 'single employer' doctrine applies when 'two nominally separate entities are actually part of a single integrated enterprise.'" Lima v. Addeco, 634 F. Supp. 2d 394, 399-400 (S.D.N.Y. 2009) (quoting Arculeo v. On-Site Sales & Mktg., LLC, 425 F.3d 193, 198 (2d Cir. 2005)). In determining whether two entities operate as a single employer, a court will consider four factors: (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1240 (2d Cir. 1995); see also Fowler v. Scores Holding Co., Inc., 677 F. Supp. 2d 673, 681 (S.D.N.Y. 2009).

"Second, the 'joint employer' doctrine applies when separate legal entities have chosen to handle certain aspects of their employer-employee relationships jointly." Lima, 634 F. Supp. 2d at 400 (citations and internal quotation marks omitted). "Where this doctrine is operative, an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability for violations of employment law on the constructive employer . . . ." Arculeo, 425 F.3d at 198. In determining whether a joint employer relationship exists,

-8-

"[r]elevant factors include the commonality of hiring, firing, discipline, pay, insurance, records, and supervision." N.L.R.B. v. Solid Waste Servs., Inc., 38 F.3d 93, 94 (2d Cir. 1994). As a functional matter, courts consider "the control that the joint employers exercise over the employee in setting the terms and conditions of that employee's work." Gore v. RBA Grp., No. 03-CV-9442 (KMK)(JCF), 2008 WL 857530, at *4 (S.D.N.Y. Mar. 31, 2008). When a plaintiff alleges Title VII liability based on a joint employer theory, "the appropriate focus is on the actual decisionmaker." Sosa v. Medstaff, Inc., No. 12 Civ. 8926(NRB), 2013 WL 6569913, at *3 (S.D.N.Y. Dec. 13, 2013).

## III.  Analysis

Plaintiff attempts to marshal evidence to suggest that a genuine issue of material fact exists regarding whether Scores Holding was her employer. Her core contention is that "all of the relevant entities in this action were entirely or almost entirely owned and controlled by the same people." Pl. Opp'n at 6. Chief among these common owners was Goldring, who could allegedly "exercise substantial influence and control over Scores Holding due to his vast plurality ownership stake [and] former executive and directorial positions." Id. at 7.

Shiflett also lists a series of examples that she claims demonstrate the interconnectedness between Scores Holding and

-9-

Scores West.  First, she references the help that defendant
provided to Scores West, namely "training and business
assistance" and "a loan [for which] Scores Holding never
received any repayment."  Id.  Second, Shiflett offers as
evidence the fact that "Scores Holding maintained its corporate
offices directly above the club operated by Go West," and that
defendant's rent was treated as an offset rather than collected
on a regular basis.  Id.  And finally, she maintains that the
inclusion of Scores Holding's office number in the list of
"Important Addresses and Phone Numbers" in her employee handbook
suggests that Scores West and defendant had interrelated
operations and co-managed employees.  See id. at 8-9.

It is clear from plaintiff's strained assertions that she
is trying to mold the facts to fit the single employer rubric
when, in fact, Scores Holding's relationship with Scores West is
simply consistent with a licensing arrangement.  With regard to
the "training and business assistance" provided to Scores West
by defendant, the record states that this entailed offering
advice on questions such as, "Should we make this invitation red
or blue?  Should I talk to this person about a promotion?  How
can I make the club more profitable?  How can I deal with
competitive issues, things like that?"  Neilson Dep. at 37:23-
38:3.  Scores Holding's collaboration with Scores West on these

-10-

S00010

matters is not the same as "handling job applications, approving
personnel status reports, and exercising veto power over major
employment decisions," which are the hallmarks of acting as an
employer under Title VII.  Parker v. Columbia Pictures Indus.,
204 F.3d 326, 341 (2d Cir. 2000).  Assistance of the type
defendant provided is certainly not akin to participation in
"the final decisions regarding employment matters," and we find
Shiflett's suggestion otherwise to be unpersuasive.  Cook, 69
F.3d at 1240 (quoting Trevino v. Celanese Corp., 701 F.2d 397,
404 (5th Cir. 1983)); see also Herman v. Blockbuster Entm't
Grp., 18 F. Supp. 2d 304, 311 (S.D.N.Y. 1998).

   Plaintiff's other assertions are similarly lacking.  The
financial dealing between Scores Holding and Scores West --
namely, the loan and the rent terms -- "is evidence of a close
relationship, but it has nothing to do with labor relations" and
therefore does not suggest the existence of a single employer.
Velez v. Novartis Pharmaceuticals Corp., 244 F.R.D. 243, 253
(S.D.N.Y. 2007); see also Fenner v. News Corp., No. 09 Civ.
09832(LGS), 2013 WL 6244156, at *9 (S.D.N.Y. Dec. 2, 2013)
(rejecting the plaintiff's contention that the fact that two
entities share office space "supports a finding that the
companies are integrated" for Title VII purposes).  Moreover,
plaintiff's naked assertion that the inclusion of defendant's

-11-

S00011

phone number in her employee handbook shows that "Scores Holding played a _significant_ role in the operations of Go West" is without merit. Pl. Opp'n at 8 (emphasis added). Instead, the manual establishes merely the "routine connections among corporate affiliates" that, in and of themselves, do not suggest an integrated employer arrangement. Velez, 244 F.R.D. at 253.

Returning to the four-prong test enumerated in Cook, the evidence supports a finding for plaintiff on only the final factor: common ownership. The fact that Goldring was the majority owner of Scores West and the plurality stockholder of Scores Holding is undeniable and undisputed. However, once we strip plaintiff's assertions down to their bare essentials, this fact is all that remains. Most notably, Shiflett fails to offer any credible evidence that Scores Holding exercised control over labor relations at Scores West, which is the "central concern" of our inquiry. Murray v. Miner, 74 F.3d 402, 404 (2d Cir. 1996); see also Leshinsky v. Telvent GIT, S.A., 873 F. Supp. 2d 582, 603 (S.D.N.Y. 2012); Chen v. TYT East Corp., No. 10 Civ. 5288(PAC), 2012 WL 5871617, at *3 (S.D.N.Y. Mar. 21, 2012). "[I]n the absence of a meaningful showing of control by [one party] over employment decisions of the [other] . . . a demonstration of common management or ownership between the two entities will not tip the scale." Ennis v. Tyco Int'l Ltd., No.

-12-

S00012

02 Civ. 9070(TPG), 2004 WL 548796, at *5 (S.D.N.Y. Mar. 18, 2004); see also Snyder v. Advest, Inc., No. 06 CIV. 1426(RMB), 2008 WL 4571502, at *7 (S.D.N.Y. June 8, 2008) ("[C]ommon ownership alone is insufficient to establish application of the single employer doctrine.") (citations and internal quotation marks omitted).    Therefore, we find that, for liability purposes under Title VII, no reasonable jury could conclude that Scores Holding and Scores West acted as Shiflett's single employer.

The same evidence -- or lack thereof -- also indicates that Scores Holding was not Shiflett's joint employer.    First, plaintiff does not allege that she was hired, fired, or managed by one of Scores Holding's two employees; in fact, she admits that Go West was the payor on her checks and that everyone, including her managers, referred to her place of employment "exclusively as Scores West."    Pl. Mem. Ex. E (Shiflett Aff.) ¶¶ 6-7; see Arculeo, 425 F.3d at 202 (listing commonality of control over hiring, firing, pay, and supervision as four key factors in a joint employer analysis).    Second, we have already established that the advice and guidance allegedly provided by Scores Holding to Scores West is a far cry from exercising control over the "terms and conditions" of the work of a Scores West employee.    Gore, 2008 WL 857530, at *4.    And third, Shiflett provides no evidence to support the conclusion that

-13-

Scores Holding was the actual decisionmaker for what occurred within the confines of Scores West. See Woodman v. WWOR-TV, Inc., 411 F.3d 69, 89 (2d Cir. 2005) ("[A]n employer's intent to discriminate must be evaluated by reference to the decision-maker actually ordering the adverse employment action . . . .") (citing Dawson v. Bumble & Bumble, 398 F.3d 211, 224-25 (2d Cir. 2005)). Thus, Shiflett has failed to raise a genuine issue of material fact as to whether Scores Holding functioned as her joint employer; the record makes clear that it did not.

Ultimately, "the law only treats the employees of a corporate entity as the employees of a related entity under extraordinary circumstances." Murray, 74 F.3d at 404. Shiflett has not met this high burden -- whether the Court applies the single or the joint employer theory, the evidence that Scores Holding and Scores West operated as an integrated enterprise remains too thin. At its core, this is a case in which plaintiff attempts to fit a square peg in a round hole: with Scores West, her actual employer, in bankruptcy, she now tries to shape her claim in such a way that Scores Holding, an entity with resources, could be liable for her alleged mistreatment. But despite this attempt, the bounds of the law are not so forgiving. As a result, defendant cannot be held liable as an

-14-

employer under federal law, and we hereby grant its motion for
summary judgment and dismiss plaintiff's Title VII claims.

Having granted summary judgment and dismissed all of the
claims for which there exists federal-question jurisdiction, it
is within this Court's discretion to decide whether to exercise
supplemental jurisdiction over plaintiff's remaining state and
municipal law claims. Klein & Co. Futures, Inc. v. Bd. of Trade
of City of N.Y., 464 F.3d 255, 262-63 (2d Cir. 2006); see also
Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)
("[I]n the usual case in which all federal law claims are
eliminated before trial, the balance of factors to be considered
under the pendent jurisdiction doctrine -- judicial economy,
convenience, fairness, and comity -- will point toward declining
to exercise jurisdiction over the remaining state-law claims.").
We exercise this discretion here and decline supplemental
jurisdiction over Shiflett's NYSHRL and NYCHRL claims, which are
hereby dismissed without prejudice.

S00015

## CONCLUSION

For the aforementioned reasons, defendant's motion for summary judgment is granted insofar as this Court dismisses all federal claims.    This Memorandum and Order resolves docket number 10, and the Clerk of Court is respectfully requested to close this case.

**SO ORDERED.**

Dated:      New York, New York
            April  *10* , 2014

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

-16-

S 0 0 0 1 6

Copies of the foregoing Memorandum and Order have been mailed on
this date to the following:

Justin S. Clark, Esq.
Levine & Blit, PLLC
350 Fifth Avenue, 36th Floor
New York, NY 10118

Neal S. Greenfield, Esq.
Corporate Counsel
Scores Holding Company Inc.
617 Eleventh Avenue
New York, NY 10036

S00017